IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MUNZER DAJANI, individually and behalf of all others similarly situated,<br><br>                Plaintiff,<br>  v.<br>DELL INC.,<br>                Defendant.<br>                                          / | No. C 08-5285 SI<br><br>**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS WITH LEAVE TO AMEND** |

Defendant has filed a motion to dismiss the complaint. Pursuant to Civil Local Rule 7-1(b), the Court determines that the matter is appropriate for resolution without oral argument, and VACATES the hearing scheduled for March 27, 2009 at 9:00 am. **The case management conference scheduled for March 27, 2009 at 2:30 pm remains on calendar**. For the reasons set forth below, the Court concludes that Texas law governs plaintiff's statutory and common law claims. Accordingly, the Court GRANTS defendant's motion to dismiss, and GRANTS plaintiff leave to amend to state claims under Texas law.

**BACKGROUND**

Plaintiff Munzer Dajani filed this class action against Dell, Inc. alleging that Dell fraudulently markets its "Ink Management System," which is a technology feature on all Dell inkjet printers and which purports to display ink levels on the status window during every print job. Comp. ¶ 2. The feature proactively prompts users to order replacement cartridges directly from Dell. *Id*. Plaintiff alleges that the "Ink Management System" is highly imprecise and inaccurate, and that the "Ink Management System" is "designed to deceive customers into replacing what they believe to be nearly

empty cartridges, which in fact contain a substantial amount of usable ink." *Id.* ¶ 3. Plaintiff seeks to represent a class of "all individuals and entities in California who own or have owned Dell inket printers." *Id.* ¶ 45. The complaint alleges claims under California statutory and common law, including the Consumers Legal Remedies Act, Cal. Civ. Code § 1750; the Unfair Competition Law, Cal. Bus. & Prof. Code § 17200; and the False Advertising Law, Cal. Bus. & Prof. Code § 17500.

## DISCUSSION

Defendant moves to dismiss the complaint on the ground that Texas law governs all claims between customers and Dell. Defendant relies on a provision contained in the "U.S. Terms and Conditions of Sale," which provides:

> **11. Governing Law. THE PARTIES AGREE THAT THIS AGREEMENT, ANY SALES THERE UNDER, OR ANY CLAIM, DISPUTE, OR CONTROVERSY (WHETHER IN CONTRACT, TORT, OR OTHERWISE, WHETHER PREEXISTING, PRESENT OR FUTURE, AND INCLUDING STATUTORY, COMMON LAW, AND EQUITABLE CLAIMS) BETWEEN CUSTOMER AND DELL** arising from or relating to this agreement, its interpretation, or the breach, termination or validity thereof, the relationships which result from this agreement, Dell's advertising, or any related purchase **SHALL, TO THE MAXIMUM EXTENT PERMITTED BY APPLICABLE LAW, BE GOVERNED BY THE LAWS OF THE STATE OF TEXAS, WITHOUT REGARD TO CONFLICTS OF LAWS RULES**.

Pape Decl. Ex. A ¶ 11 (bold in original).[1]

In a diversity action, the Court must look to the law of the forum state when making choice of law determinations. *See Fields v. Legacy Health Sys.*, 413 F.3d 943, 950 (9th Cir. 2005). In analyzing the enforceability of "contractual choice-of-law provisions, California courts shall apply the principles set forth in Restatement section 187, which reflects a strong policy favoring enforcement of such provisions." *Nedlloyd Lines B.V. v. Superior Court*, 3 Cal.4th 459, 464-65 (1992). Restatement

---

[1] According to Dell, "[i]n the ordinary course of business, when a customer or small business customer, such as Plaintiff Munzer Dajani, purchases computers or printers from Dell, the customer and Dell agree to [the sales agreement]." Pape Decl. ¶ 4. "[A]fter a customer such as Plaintiff placed a telephonic order, Dell's standard business practice was to telephonically inform each purchaser that the sale was governed by the Agreement and give that customer instructions on how to access the Agreement." *Id.* ¶ 5. Dell also included a live hyperlink to the agreement in an email to the customer confirming the order, and also sent a copy of the agreement with delivery of the purchased computer and printer equipment. *Id.*; *see also id.* ¶¶ 8-11 (describing other ways in which customers can review the agreement on Dell's website and catalogs, and how customers can cancel orders after reviewing agreement).

(Second) of Conflicts of Law § 187(2), in turn, provides:

> The law of the state chosen by the parties to govern their contractual rights and duties will be applied, even if the particular issue is one which the parties could not have resolved by an explicit provision in their agreement directed to that issue, unless either (a) the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice, or (b) application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue and which, under the rule of § 188, would be the state of the applicable law in the absence of an effective choice of law by the parties.

Here, because Dell's principal place of business is Texas, plaintiff assumes for the purposes of this motion that Texas has a substantial relationship to Dell, and does not contest the first prong of the analysis. Plaintiff's Opposition at 4:27-28.

The parties' dispute centers on the second prong of the analysis, namely whether application of Texas law would be contrary to a fundamental policy of the State of California. Plaintiff contends that because the "Terms and Conditions" contains an arbitration provision containing a class action waiver clause, application of Texas law would be contrary to California's fundamental policies as embodied by the state's consumer protection laws. Plaintiff argues that because Texas courts have upheld contractual prohibitions of class actions, if defendant sought to compel individual arbitration under Texas law, application of Texas law would violate California's fundamental policies of ensuring the availability of class actions and protecting consumer remedies.

Defendant responds that plaintiff's arguments are misplaced because the Court must conduct a separate choice-of-law analysis with respect to each issue in the case, and thus the question of what law governs the enforceability of the arbitration provision is distinct from the issue of what law applies to plaintiff's statutory and common law claims. *See Washington Mut. Bank, FA v. Superior Court*, 24 Cal. 4th 906, 920 (2001) ("These rules apply whether the dispute arises out of contract or tort, and a separate conflict of laws inquiry must be made with respect to each issue in the case.") (internal citations omitted). None of plaintiff's authority is to the contrary, and indeed all of the cases cited by plaintiff address choice-of-law issues when defendants have sought to compel arbitration and enforce class action waivers. *See, e.g.*, *Hoffman v. Citibank, N.A.*, 546 F.3d 1078 (9th Cir. 2008); *Oestreicher v. Alienware Corp.*, 502 F. Supp. 2d 1061 (N.D. Cal. 2007); *America Online, Inc. v. Superior Court*, 90 Cal. App. 4th 1 (2001). Accordingly, the Court finds that the issues raised by the arbitration provision are

3

irrelevant to the issue currently presented; if defendant seeks to compel arbitration, the Court will conduct a separate choice-of-law analysis on that issue.[2]

Defendant relies on *Brazil v. Dell Inc.*, 585 F. Supp. 2d 1158 (N.D. Cal. 2008), in which Judge Whyte interpreted the same "Terms and Conditions" at issue here and held that while California law governed the arbitration provision, Texas law governed the statutory and common law claims. In *Brazil*, the California plaintiffs brought a class action against Dell alleging violations of the FAL, UCL, and CLRA, as well as common law claims for breach of contract, misrepresentation, and unjust enrichment. The plaintiffs claimed that Dell advertised false discounts from false former prices, false "free" offers, and false rebate discounts. *Id.* at 1161. Judge Whyte engaged in a detailed comparison of Texas and California law, and concluded that applying Texas law was largely consistent with California law, and to the extent there were any differences, those differences did not implicate any fundamental policies of California. *Id.* at 1162-66.

Here, the CLRA violations alleged by plaintiff's complaint are prohibited by identical provisions contained in the Texas Deceptive Trade Practices Act ("DTPA"). *Compare* Cal. Civ. Code § 1770(a)(5), cited at Compl. ¶ 63(1) (prohibiting "representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have"), *with* Tex. Bus & Comm. Code § 17.46(b)(5) (prohibiting "representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have"). Similarly, plaintiff alleges a violation of Cal. Civ. Code § 1770(a)(7), which prohibits "[r]epresenting that goods or services are of a particular standard, quality, or grade . . . if they are of another." *See* Compl. ¶ 65. The DTPA contains an identical prohibition. *See* Tex. Bus. & Comm. Code § 17.46(b)(7). The other alleged violations of the CLRA have analogous provisions in the DTPA. *Compare* Cal. Civ. Code § 1770(a)(9), *with* Tex. Bus. & Comm. Code § 17.46(b)(15); *compare* Cal. Civ. Code § 1770(a)(15), *with*

---

[2] Defendant states it "has no intention" of seeking to enforce the class waiver arbitration provision "against this California plaintiff and California-only class." Reply at 3:1-2.

4

Tex. Bus. & Comm. Code § 17.46(b)(13).[3]

Plaintiff does not argue that Texas law does not provide a remedy for violations alleged here. Instead, the only difference between Texas and California law that plaintiff identifies is related to arbitration. Relying on *America Online, Inc. v. Superior Court*, 90 Cal. App. 4th 1, 11 (2001), plaintiff argues that because class action waivers are enforceable under Texas law, "application of Texas law might effectively waive Plaintiff's right to bring an action under the CLRA, a result expressly precluded by the CLRA['s anti-waiver provision]." Opposition at 6:17-18. Again, plaintiff is improperly conflating the question of whether the class waiver provision is enforceable (and what law applies to that issue), with the question of what law governs plaintiff's substantive claims. In any event, *America Online* is distinguishable. That consumer class action involved both a Virginia choice of law provision and a forum selection clause requiring all lawsuits to be brought in Virginia. The *America Online* court determined that Virginia law did not apply, and the forum selection clause was unenforceable, primarily because the analogous Virginia consumer protection statute did not allow for class actions. *America Online*, 90 Cal. App. 4th at 17 ("In contrast to Virginia consumer law's ostensible hostility to class actions, the right to seek class action relief in consumer cases has been extolled by California courts."). As Judge Whyte held in rejecting a similar argument in *Brazil*, "unlike Virginia law, Texas law permits consumer lawsuits to be brought as class actions [and] plaintiffs fail to demonstrate how the remedies under the DTPA are more limited than those under California law." *Brazil*, 585 F. Supp. 2d at 1163-64.

The Court concludes that the application of Texas law does not conflict with a fundamental policy of California, and thus Texas applies to plaintiff's statutory and common law claims. *See Nedlloyd Lines B.V.*, 3 Cal. 4th at 465 (if there is no conflict, "the court shall enforce the parties' choice of law"). Accordingly, the Court GRANTS defendant's motion to dismiss and GRANTS plaintiff leave to amend to replead claims under Texas law. As such, the Court does not reach defendant's arguments that the complaint is insufficiently pled.

---

[3] Unlike California, Texas does not have separate statutes concerning false advertising and unfair competition. However, in *Brazil* Judge Whyte found that this difference did not present a conflict of laws for purposes of that case because the *Brazil* plaintiffs' claims under the FAL and UCL were remediable under the DTPA. Here, too, the gravamen of plaintiff's CLRA, FAL and UCL claims is that defendant's "Ink Management System" fraudulently misrepresents the amount of ink remaining in customer's cartridges. The DTPA contains provisions to redress these allegedly deceptive practices.

5

**CONCLUSION**

For the foregoing reasons, the Court GRANTS defendant's motion to dismiss the complaint, and GRANTS plaintiff leave to amend to state claims under Texas law. (Docket No. 20). If plaintiff wishes to amend the complaint, plaintiff must do so by **April 17, 2009**.

**IT IS SO ORDERED.**

Dated: March 26, 2009

                                                SUSAN ILLSTON
                                                United States District Judge